IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| **BLACKTOWER GROUP, INC.,** a Pennsylvania Corporation, Plaintiff, v. **B. BAKER CONSULTING LLC D/B/A BRIKER COMMUNICATIONS,** a Florida Limited Liability Corporation, Defendant. | Case No. |

## COMPLAINT

Plaintiff BlackTower Group, Inc. ("Plaintiff" or "BlackTower"), by and through its undersigned counsel, complains and alleges as follows:

### STATEMENT OF THE CASE

1. This is an action for breach of contract stemming from Defendant B. Baker Consulting LLC d/b/a Briker Communications' ("Defendant" or "Briker") failure to pay monies owed under the parties' Master Services Agreement and related invoices.

### PARTIES, JURISDICTION, AND VENUE

2. Plaintiff BlackTower Group, Inc. ("BlackTower") is a Pennsylvania corporation with a principal place of business at 10077 Sandmeyer Ln., Unit 5, Philadelphia, PA 19116.

1

3. Defendant B. Baker Consulting LLC d/b/a Briker Communications is a Florida limited liability company with a principal place of business 10631 Horizon Drive, Spring Hill FL 34608.

a. This Court has jurisdiction over the subject matter of this lawsuit pursuant to 28 U.S.C. § 1332(a)(2) because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between a corporate citizen of the Commonwealth of Pennsylvania and a corporate citizen of the State of Florida. The sole members of Briker are Brian Baker and Veronica Baker, who are citizens of the State of Florida.

4. This Court possesses personal jurisdiction over Briker pursuant to Fla. Stat. § 48.193(1)(a)(1) because it is operating, conducting, engaging in, and/or carrying on a business or business venture in Florida. Briker is further subject to personal jurisdiction in this Court pursuant to Fla. Stat. § 48.193(1)(a)(9) because it entered into a Master Services Agreement with BlackTower, and said contract complies with Fla. Stat. § 685.102. Said Master Services Agreement calls for the application of Florida law, as well as the submission to jurisdiction in the state and federal courts of Florida.

5. Venue is proper in this Court pursuant to the parties' Master Services Agreement, which mandates venue in the applicable state or federal courts and venues located in the State of Florida.

6. All conditions precedent to the filing of this lawsuit have been performed, satisfied, and/or waived.

## BACKGROUND

### The Telecommunications Industry

7. BlackTower is in the business of providing labor in the telecommunication services industry, which includes providing ISP/OSP services. ISP/OSP services involve setting up essential infrastructures underground to enable seamless communication. This includes the installation of fiber optic or copper cabling, connectors, and other components, establishing robust networks for data, voice, or video transmission ("Fiber Work"). Fiber Work is done on behalf of a few, national companies that are in the business of providing communications services, such as Verizon, Frontier, Comcast, and AT&T ("Clients").

8. In the United States, there are a dozen or so large companies that provide Fiber Work directly to the Clients, such as Jacobs, ADB, MasTec and others ("Tier One Contractor").

9. In this industry, Tier One Contractors frequently work with smaller subcontractors on projects for the Clients ("Tier Two Contractor").

10. BlackTower's role is often that of a sub-contractor to Tier One Contractors. However, in this matter, BlackTower was a subcontractor for Briker, a Tier Two Contractor.

11. The type of work performed by BlackTower's crews for Briker included: excavation, concrete/asphalt cutting, directional drilling, underground conduit installation, fiber placement, handhole placement, and ground restoration (collectively, "Services").

## Signing of the MSA

12. On or about May 19, 2023, BlackTower and Briker executed that certain document entitled Master Services Agreement ("MSA"). A true and correct copy of the MSA is attached hereto as Exhibit "A".

13. Pursuant to the MSA, BlackTower agreed to and did, in fact, provide Services to Briker from May 2023 through July 2024.

14. In or around May and June of 2024, Briker assigned BlackTower to two work sites, on located in Arkansas, and one located in Texas.

## Arkansas Site

15. On or around May 2, 2024, Briker offered BlackTower work on a site located in Alexander, Arkansas ("Arkansas Project")[1].

16. The work was on behalf of Jacobs, a Tier One Contractor. The Scope of Work ("SOW") for this project was as follows: directional boring to run conduits underground for fiber, running fibers in all conduits, installing hand hole

---

[1] The parties referred to the Arkansas Project as Site A02QX26.

boxes, and restoring the ground to good condition once the aforementioned work was completed.

17. The initial Purchase Order amount for the Arkansas Project was $200,320.60. However, this amount increased to $239,265.15 due to additional work requested by Jacobs.

18. BlackTower began construction on the Arkansas Project on or around May 7, 2024 and finished construction on or around June 21, 2024.

19. BlackTower returned to the site on the following dates to perform minor corrections ("Punch Order Corrections"): July 16-18, July 21-22, and July 30.

20. BlackTower invoiced Briker an additional $2,625.00 for performing the Punch Order Corrections.

21. On or around September 24, 2024, Brad Thomas, the Telecommunications Director of Jacobs confirmed with BlackTower that the Arkansas Project was officially completed, and that AT&T, the project's Client, had accepted the work, albeit for one minor issue relating to damage to a fiber wire, which AT&T corrected itself. The back charge for the damage was $1,260.98.

22. Per Jacobs, the damage was minor, and overall, the project was a success.

23. On or around July 22, 2024, BlackTower sent Briker an invoice in the amount of $239,265.15 for the work it did on the Arkansas Project ("First Arkansas

Project Invoice"). A copy of the First Arkansas Project Invoice is attached hereto as Exhibit "B".

24. Payment of the First Arkansas Project Invoice was due on or before September 5, 2024.

25. Despite successfully completing the Arkansas Project, Briker has refused to pay the First Arkansas Project Invoice.

26. On or around August 9, 2024, BlackTower sent Briker an invoice in the amount of $2,625.00, ("Second Arkansas Project Invoice"). A copy of the Second Arkansas Project Invoice is attached hereto as Exhibit "C".

27. Payment of the Second Arkansas Project Invoice, minus the back charge of $1,260.98 for the Punch Order Corrections work was due on or before September 23, 2024.

28. Despite successfully completing the Arkansas Project, Briker has refused to pay the Second Arkansas Project Invoice.

## Texas Site

29. On or about June 10, 2024, Briker offered BlackTower work on a site located in Round Rock, Texas ("Texas Project").[2]

30. The work was on behalf of ADB, another Tier One Contractor. The SOW for this project was as follows: directional boring to run conduits underground

---

[2] The parties referred to the Texas Project as Site A01Z0ZF.

for fiber, running fibers in all conduits, installing hand hole boxes, and restoring the ground to good conditions once the aforementioned work was completed.

31. The initial Purchase Order amount for the Texas Project was $491,982.36, and the project was to be completed in phases.

32. On or around June 17, 2024, prior to starting the first phase, BlackTower and Briker attended a pre-construction meeting with ADB, AT&T (the Client for the Texas Project), and an inspector from the city of Round Rock ("Pre-Construction Meeting").

33. At the Pre-Construction Meeting, it was confirmed that nobody knew the composition of the underground soil, and said composition would only be determined once drilling began.

34. The composition of the soil was important, because if the ground was too rocky, it would make digging extremely difficult. The work would take four to five times as long to complete, making the project financially unfeasible for BlackTower if there was no corresponding increase in BlackTower's retainage of the Purchase Order, or an increase in payment from the Client.

35. From June 17, 2024 through June 26, 2024, BlackTower began working on the sections Briker assigned to it, which were labeled the first phase ("First Phase").

36. BlackTower quickly discovered during the First Phase that soil in all of the assigned sections consisted of solid rock.

37. Due to these unforeseen conditions, it became clear that neither BlackTower nor Briker had the necessary experience to handle solid rock drilling without proper training.

38. Additionally, both BlackTower and Briker agreed that the price offered by ADB did not account for work in such challenging conditions.

39. Briker also lacked the expertise to work with solid rock and informed BlackTower that it planned to bring in an experienced operator to teach the team how to proceed correctly.

40. On June 26, 2024, the parties agreed at an on-site meeting to pause BlackTower's work until Briker could complete a few drills with the guidance of an experienced operator ("June 26 Agreement").

41. Following the June 26 Agreement, BlackTower had daily phone calls with Briker to discuss Briker's progress.

42. On June 29, 2024, Briker informed BlackTower that it had found the right approach for BlackTower to drill into the solid rock, and that BlackTower could resume work on June 30, 2024.

43. From July 1, 2024 through July 28, 2024, BlackTower was on site to complete the First Phase of the Texas Project.

44.     Throughout these weeks, BlackTower and Briker had ongoing discussions concerning pricing due to the unexpected rock conditions, which made working on the Texas Project lengthier than anticipated, and forced BlackTower to incur additional costs due to the delay.

45.     Although Briker assured BlackTower that the pricing would be adjusted, BlackTower's numerous attempts to escalate the change order to increase the Purchase Order price went unanswered until the First Phase was nearly complete.

46.     On or around July 17, 2024, Briker informed BlackTower that the project pricing would remain the same because ADB would not approve an increase.

47.     Although this cut into BlackTower's profits, as a gesture of good faith BlackTower continued to work on the First Phase.

48.     Relying on Briker's assertions that ADB refused to increase the project price, BlackTower requested that Briker increase the percentage retained by BlackTower up from the 70% of the Purchase Order that had already been agreed to by the parties.

49.     Briker did not approve BlackTower's request to increase its share of the project price.

50.     On July 24, 2024, BlackTower submitted all necessary close out documents to Briker. BlackTower also submitted its first invoice to Briker in the

9

amount of $105,503.44 ("First Texas Project Invoice"). A copy of the First Texas Project Invoice is attached hereto as Exhibit "D".

51. BlackTower successfully completed the First Phase on July 28, 2024.

52. On August 6, 2024, BlackTower sent a second invoice to Briker in the amount of $16,105.29 ("Second Texas Project Invoice"). A copy of the Second Texas Project Invoice is attached hereto as Exhibit "E".

53. On or around July 30, 2024, Briker relocated BlackTower's crew from the Texas Project to the Arkansas Project to finalize the Punch Order Corrections.

54. Before BlackTower's crew could return to the Texas Project to start on a new phase of the project, Briker informed BlackTower on August 3, 2024 that it had brought in additional equipment and no longer needed BlackTower's help with the new sections.

55. Briker also informed BlackTower that ADB had increased the per-footage rate, making it more effective for Briker to complete the project in-house.

56. On August 10, 2024, Briker reached out to BlackTower requesting its assistance on the Texas Project and offered to give BlackTower 90% of the Purchase Order price.

57. In response to this offer, BlackTower requested written confirmation from Briker that it would pay BlackTower 90% of the Purchase Order price to return to the Texas Project and begin working on the new phase of construction.

58. However, during a follow up conversation on August 11, 2024, Briker changed its mind, and told BlackTower that it would only increase the Purchase Order retainage by 5% based on the original Purchase Order, and that ADB did not in fact increase the Purchase Order amount for Briker due to the soil conditions.

59. BlackTower declined the offer of a 5% increase, as it would not cover BlackTower's costs to complete that phase of the project.

60. On August 12, 2024, Briker sent an email with another offer, increasing the original Purchase Order retainage from 70% to 85%.

61. As this was not the 90% that had been agreed to on the August 10, 2024 phone call, and BlackTower would be performing all of the work, BlackTower declined this revised offer.

62. Payment of the First Texas Project Invoice was due on September 7, 2024, and payment of the Second Texas Project Invoice was due on September 13, 2024.

63. Despite successfully completing the First Phase of the Texas Project, Briker has refused to pay the First and Second Texas Project Invoices.

64. The First Arkansas Project Invoice, Second Arkansas Project Invoices, First Texas Project Invoice, and Second Texas Project Invoice shall collectively be called the "Invoices".

## COUNT I
## <u>BREACH OF CONTRACT</u>

65. BlackTower incorporates by reference the preceding paragraphs as though fully set forth herein.

66. BlackTower and Briker are parties to the MSA. *See* Exhibit "A".

67. Pursuant to the MSA, Briker would provide work opportunities to BlackTower, BlackTower would complete the work, after which Briker would pay BlackTower for said work.

68. Briker provided BlackTower with two sites, the Arkansas Project and the First Phase of the Texas Project.

69. BlackTower fully performed its obligations under the MSA by completing the Arkansas Project and the First Phase of the Texas Project.

70. Briker breached the MSA by failing to pay the Invoices sent to it by BlackTower for work performed on the Arkansas and Texas Projects.

71. As a direct and proximate result of Briker's aforementioned breach, BlackTower has been damaged.

WHEREFORE, Plaintiff BlackTower Group, Inc. respectfully requests that the Court enter a judgment in its favor and against Defendant B. Baker Consulting LLC d/b/a Briker Communications for breach of the MSA, award Plaintiff all damages it is entitled to as a matter of law for monies owed to it totaling

$362,237.94, compensatory damages, as well as default interest, costs, as well as all further relief this court deems just and appropriate.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | */s/ Samantha F. Green* |
|  | Samantha F. Green, Esquire |
|  | **SIDKOFF, PINCUS & GREEN, P.C.** |
|  | 1101 Market Street, Suite 2700 |
|  | Philadelphia, PA 19107 |
|  | (215) 574-0600 |
|  | (215) 574-0310 (fax) |
|  | sgreen@sidkoffpincusgreen.com |
| Dated: October 25, 2024 | *Attorneys for Plaintiffs* |
|  | /s/*Kevin Zwetsch* |
|  | Kevin D. Zwetsch, Esquire |
|  | Florida Bar No. 0962260 |
|  | kevin.zwetch@BrickBusinessLaw.com |
|  | Brick Business Law, P.A. |
|  | 3413 W. Fletcher Ave. |
|  | Tampa, FL 33618 |
|  | Phone: 813-816-1816 |
|  | Attorneys for Plaintiffs |